No. 2441

Second Circuit

JEFFERSON v. CADDO TRANSFER & W. CO.

(April 10, 1926, Opinion and Decree)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Automobiles—Par. 8.**

The plaintiffs in a suit for damages arising out of an automobile accident carry the burden of making out their case beyond a reasonable doubt. Therefore, where the evidence is conflicting but circumstances show that the evidence of the defendant's witnesses is more likely correct there must be judgment for the defendant.

(Civil Code, Art. 2315. Editor's note.)

2. **Louisiana Digest—New Trial—Par. 42, 43.**

A new trial will not be granted where the application of plaintiff contains affidavits on an immaterial point which he wishes to prove, namely, that the truck after running over the boy ran some thirty or forty feet before it stopped.

Action by Phillip and Hattie Jefferson vs. Caddo Transfer and Warehouse Co. There was judgment for defendant and plaintiffs appealed.

Judgment affirmed.

Murff & Perkins, of Shreveport, attorneys for plaintiffs, appellants.

Wise, Randolph, Randell & Freyer, of Shreveport, attorneys for defendant, appellee.

ODOM, J. On March 1, 1924, plaintiffs' son, about 17 years old, was run over and killed on a public street in the city of Shreveport by a truck owned and operated by the defendant.

Plaintiffs bring this suit for damages resulting from the death of their son, and allege that his death was caused solely through the fault and negligence of the driver of said truck.

Defendant answered denying liability and defended the suit on the ground that there was no negligence on the part of its driver but that the accident was wholly unavoidable.

The district judge rejected plaintiffs' demand and they have appealed.

OPINION

The accident which resulted in the death of plaintiffs' son occurred in the daytime on Texas avenue in the city of Shreveport. Texas avenue is 40 feet and 6 inches from curb to curb. There is along the center of the avenue double street car tracks.

The truck which ran over and killed plaintiffs' son was being driven in a westerly direction out Texas avenue, away from the business section of the city.

The accident happened on the right hand side of the street car track going out. The right hand rail of the outbound street car track at the place where the accident happened is 13 feet from the curb.

There was a gravel wagon being driven on the right hand side of the street going out about two feet from the curb. The truck approached this wagon from the rear and about the time it got opposite the side of the gravel wagon plaintiffs' son came between the truck and the wagon riding a bicycle going in the same direction as the truck and the wagon and in some way was thrown to the ground and the truck ran over him.

It is defendant's theory that the boy while riding along by the side of the team either put his hand on the mule which frightened him and caused him to make a move which threw the boy to the street, or that in some way the handle bar of his bicycle became entangled in the harness on the mule and that he was in that way thrown to the pavement and run over.

Counsel for plaintiffs, in brief, say that the crucial point in the case is:

"Was the boy knocked against the mules and fell back under the truck, or did he himself run into the mules and fall back under the truck which was so close it could not prevent the accident."

That seems to be the view accepted not only by counsel for plaintiff but counsel for defendant.

Therefore it is conceded that if the boy in riding his bicycle became entangled with the team previous to being hit there is no liability on the part of the defendant. On the contrary, if the truck struck the boy and knocked him against the team and he was then knocked back to the pavement and run over by the truck, the defendant may be liable.

At the time of the accident there were on the gravel wagon Richard Riley, the driver, and another colored man by the name of Sam Allen.

On the truck there were the driver and a boy named John Martin sitting on the seat with him and on the top of the truck there was another colored boy by the name of Sheppard.

Sheppard was subpoenaed by the defendant and Sam Allen was subpoenaed by the plaintiffs, but according to the sheriff's return neither of them could be found at the time of the trial.

Riley, the driver of the gravel wagon, and a woman by the name of Marie Morris were called as witnesses for the plaintiffs, and the driver of the truck and the boy John Martin who was with him at the time were called and testified for the defendant.

These were the only eye witnesses, so far as the record discloses, to the accident.

Richard Riley, the driver of the gravel wagon, states that the boy on the bicycle rode up by the side of his wagon and in advance of the approaching truck and that as the truck came up from the rear it ran against him, knocking him over against the mule, and that the mule on that side became frightened and in some way knocked the boy to the pavement between the front and rear wheels of the truck and that he was run over and killed by the rear wheel.

Marie Morris, the woman called as a witness by plaintiff, was walking on the sidewalk next to the gravel wagon, coming towards the business section of the city.

She says she saw the accident, and she corroborates the testimony of Riley, the driver of the wagon, to the effect that the boy was struck by the right fender of the truck and knocked over against the mule and that he then fell to the pavement under the rear right wheel of the truck.

The defendant's witnesses, on the contrary, testify as positively that the boy on the bicycle came in between the truck and the wagon and that when he got opposite the mules he either touched the mule, which frightened it, or that his handle bar became entangled in the harness on the mule, and that he was thereby thrown to the pavement in front of the truck and was run over by the right front wheel of the truck.

These two witnesses, the driver of the truck and Martin who was on the front seat with the driver at the time, are both positive that the boy was run over by the front wheel and not by the rear wheel.

It will therefore be seen that the testimony of the two witnesses called by plaintiffs and that of the two witnesses called by defendant, is conflicting on a very material point of the case, and that is, whether the truck struck the boy and knocked him against the mule, or whether the boy ran against the mule and was then thrown to the ground.

After considering all the testimony we are of the opinion that the theory of the case as advanced by the defendant is correct, and we have reached that conclusion after analyzing all the testimony.

The witness Riley, driver of the gravel wagon, states positively that the boy on the bicycle was riding in the center of the outgoing street car track and that the truck overtook him and struck him with the right fender and knocked him against the mule.

The question which naturally arises in connection with his testimony is that if the boy was riding in the center of the street car track and the truck had its right wheels on the right side of the right hand rail and its left wheels between the two rails, how could the boy be struck by the right fender and knocked over against the mule which was to the extreme right hand side of the street?

It would seem reasonable that according to Riley's theory of the position of the boy at the time he was struck and of the truck at the time it struck him, that the boy would have been knocked straight forward and not over to the side as Riley and the witness Marie Morris say he was.

This point seems to have occurred to the district judge who examined the witness and asked him specifically if he was sure that the boy, at the time he was hit, was riding between the rails of the street car track, and he reiterated that he was. He then questioned the witness as to how it could be that the boy was struck by the right fender and knocked over to the right against the mule. He attempted to explain by saying that at the point in the street where the collision occurred there was a car parked over on the left hand side of the street and that an automobile came down the street meeting them which swerved over toward the truck in order to avoid a collision with the parked car and that in order to keep from colliding with the oncoming automobile the driver of the truck swerved to the right and struck the boy.

It occurs to us that if the boy was riding between the street car tracks and the truck swerved to the right instead of his being hit by the right fender of the truck he would have been struck by the left-hand fender.

Further, with reference to the testimony of the witness Riley, two police officers were called by defendant to impeach his testimony. These police officers were not witnesses to the accident but were called by some one to go to the scene and investigate the facts. Both of these police officers testify that immediately upon being notified of the accident they went to the scene and found the boy lying in the middle of the street and that they talked to a number of persons, among others the man Riley, the driver of the wagon. They both state specifically that the driver of the wagon told them that the boy became entangled with the mule or harness and was thrown by the mule to the pavement between the wheels of the truck and was run over by the rear right wheel.

This is directly contrary to what Riley testified on the stand as above stated.

Counsel for plaintiffs criticized the testimony of these policemen mainly for the reason that they were not able to give the names of the persons whom they interviewed; but we think their testimony is not to be criticized from that standpoint, for the reason that they both state that as a matter of fact they could not recall the name of the driver of the truck nor where he said he lived; but they stated positively that the colored man who gave them the information stated to them at the time he was the driver of the gravel wagon.

We think the testimony of Riley, given at the trial, is greatly weakened by the testimony of these police officers.

The witness Marie Morris, as above stated, corroborates the testimony of the driver of the gravel wagon, but under the circumstances we seriously doubt if she was in position to see precisely what happened beyond the fact that the boy was knocked down and run over by the truck.

She is positive that she saw that and we have not doubt that she did, but we doubt if her position was such that she was enabled to see with any accuracy as to whether the truck struck the boy and knocked him against the mule or whether he ran against the mule and was knocked back to the pavement. She was on the opposite side of the wagon at the time, just in front of them, and while it is reasonable that she saw the boy when he was knocked to the pavement by coming in contact with the mule, we think it very probable that she did not see and could not tell with any degree of accuracy how the boy happened to come in contact with the mule.

But whether she did or did not see the entire transaction the fact remains that the driver of the truck and the man on the seat with him both state positively that the truck did not strike the boy but that the boy ran against the mule or in some way became entangled in the harness and was in that way thrown to the pavement.

We see no reason why we should entirely disregard the testimony of the defendant's witnesses, and if it be conceded that they are entitled to the same consideration as the witnesses for the plaintiffs, we are utterly unable to say that the driver of the truck was guilty of negligence.

The plaintiffs carried the burden of making out their case beyond a reasonable doubt. We cannot say from the evidence that they have discharged that burden.

Counsel for plaintiffs filed a motion in the District Court for a new trial, setting up that since the trial of the case they had discovered other evidence which, if introduced, would greatly strengthen their case.

They set up in that application that since the trial they have learned of two witnesses

who saw the truck about the time it ran over the boy and watched it until it stopped some thirty or forty feet beyond the place where the boy was run over, and that said witnesses would swear on the trial that the truck did not stop when it struck the boy but was running at a rapid rate of ten to twelve miles an hour and continued to run some thirty or forty feet after it struck the boy.

They further allege that one of said witnesses would swear that he was one of the first persons to talk to the negro driver in charge of the truck after he struck the boy and that this driver told him that he did not see the boy at the time he struck him and in fact did not know that he had run over him until after he had passed him.

Plaintiffs attach to this application for a new trial the affidavit of Mr. Jack Dunlap and the affidavit of Mr. J. B. Roberson. Mr. Jack Dunlap in his affidavit states that after striking the boy the truck passed on for at least thirty or forty feet before it stopped and that the driver of the truck told him that he did not see the boy at the time he was run over. Mr. Roberson states in his affidavit that the truck passed on some thirty or forty feet after striking the boy, but he does not state that he interviewed the driver of the truck.

The trial court refused to grant a new trial, and we think correctly so. We think it not material whether the truck stopped immediately after running over the boy or whether it ran on some thirty or forty feet before it stopped.

The material point is, whether the truck struck the boy and knocked him against the mule, or whether the boy ran against the mule previous to being struck by the truck.

Neither of these parties professes to have seen the accident. The most that can be stated with reference to the affidavits of these parties is that if Dunlap were to testify that the driver of the truck had told him that he did not see the boy previous to his being struck it would impeach the driver's testimony on that particular point. But if the truck driver's testimony were eliminated entirely the court would still not be convinced beyond a reasonable doubt that the driver of the truck was guilty of negligence.

If these newly discovered witnesses had stated that they saw the accident and were in position to detail the transactions connected with it, the case would be entirely different; but as we view it if plaintiffs could prove by them all that they say they can prove the case would not be made out beyond a reasonable doubt.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.